# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

**JUNG WOOK NA, Petitioner-Appellee, v.**

**JASMINE PEARL NA, Respondent-Appellant.**

**No. 26-6105**

**D.C. No. 8:25-cv-02479-DOC-ADS**

Appeal from the United States District Court for the Central District of California Hon. David O. Carter, District Judge

PETITIONER AND CROSS-APPELLANT JUNG WOOK NA'S

MOTION FOR LEAVE TO FILE OPPOSITION OUT OF TIME AND PROPOSED OPPOSITION TO RESPONDENT'S MOTION FOR STAY PENDING APPEAL

Merritt McKeon, Esq.
SBN 187983
Reel Fathers Rights APC
18881 Von Karman Ave., Suite 1600
Irvine, CA 92612
Attorney for Petitioner and Cross Appellant,
Jung Wook Na
teammerritt@reelfathersrights.com
951-460-2003

# Table of Contents

**Table of Authorities…………… ……………..…………………………………………….2**

**NOTICE AND REQUESTED RELIEF ........................................................................ 4**

***I. MOTION FOR LEAVE*** **............................................................................................ 4**

***II. PROPOSED OPPOSITION TO STAY*** **................................................................... 5**

***IV. ARGUMENT*** **...................................................................................................... 10**

**A. Respondent Has Not Made the Required Merits Showing; Due Process Rights Are Implicated in Staying the Return of S.A.N., No Evidence Was Ever Presented at Trial Alleging Any Harm to S.A.N. By Petitioner. ..................................................................10**

**B. Respondent Has Not Shown Probable, Case-Specific Irreparable Harm. ......................11**

**C. A Stay Would Substantially Injure Petitioner and Frustrate the Convention's Purpose. ..........................................................................................................................12**

**D. The Requested Stay Should Also Be Denied in the Interest of Comity. .........................13**

**E. The Requested Stay Is Inappropriate; Petitioner's Cross Appeal Will Address Deficiencies in The Judgment Which Is Likely to Prevail, Rather Than Respondent's Appeal. ..........................................................................................................................13**

***V. CONCLUSION*** **.................................................................................................... 15**

**DECLARATION..........................................................................................................15**

## TABLE OF AUTHORITIES

### Cases

*Blondin v. Dubois ('Blondin II'), 189 F.3d 240, 248–49 (2d Cir. 1999)* ...................................... 13
*Chafin v. Chafin*, 568 U.S. 165, 178–80 (2013) ............................................................................ 5
*Chafin*, 568 U.S. at 179-80.............................................................................................................. 12
*Delgado v. Marquez Delgado v. Marquez, 23-cv-05141-VKD (N.D. Cal. Feb 09, 2024)* ............ 14
*Delgado v. Marquez, 23-cv-05141-VKD (N.D. Cal. Feb 09, 2024)* ............................................. 14
*Gil-Leyva v. Leslie, No. 18-1209 (10th Cir. Jun 27, 2019)*........................................................... 14
*Golan v. Saada, 142 S.Ct. 1880 (2022)*.......................................................................................... 14
*Nken v. Holder*, 556 U.S. 418, 433–35 (2009)................................................................................. 6
*Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 395 (1993)* ................................................................................................................................... 5
*Royal Borough of Kensington & Chelsea v. Banfa-Louis, 22-cv-8303 (PKC) (S.D. N.Y. Mar 07, 2023)*; *Mohácsi v. Rippa Mohácsi v. Rippa, 346 F.Supp.3d 295 (E.D. N.Y. 2018)* .................. 14
*Simcox v. Simcox, 511 F.3d 594 (6th Cir. 2007)* ........................................................................... 14
*Stanley v. Stanley, 2:26-cv-00006 (D. Vt. Mar 26, 2026)* ............................................................ 14

### Other Authorities

Article 13 of the Hague Convention on the Civil Aspects of International Child Abduction ......... 7

### Rules

*Federal Rule of Civil Procedure 6(b)(1)(B)* ........................................................................ 4
Rule 6(b)(1)(B)........................................................................................................................ 5

### Constitutional Provisions

*Fifth Amendment to the United States Constitution* ...................................................................... 10

## NOTICE AND REQUESTED RELIEF

Petitioner Jung Wook Na requests leave to file the accompanying opposition after the stated September 28, 2026 deadline. Petitioner seeks relief under *Federal Rule of Civil Procedure 6(b)(1)(B)*, based on excusable neglect to be established by counsel's declaration and the actual notice and service records. Petitioner also requests that the Court consider the opposition before ruling on Respondent's motion or any related request for interim relief. If the Court has already ruled, counsel must revise this request to address the order entered.

Petitioner does not contend that an address-change submission, counsel's former address, or Petitioner's residence in Korea automatically suspended the deadline.

## I. MOTION FOR LEAVE

1.- Respondent filed a motion in the Ninth Circuit, seeking to stay the part of the September 4, 2026 Order and Judgment (Dkt. 69) directing S.A.N.'s return to the Republic of Korea.

2.- Petitioner understands that an opposition deadline of September 28, 2026 applied. This application and opposition is filed one day late, due to the delay in receiving notices from the Court and Opposing Counsel, due to Counsel's change of address form.

3.- Counsel's address was changed in the Pacer System several days after the Notice of Change of Address was submitted by Merritt McKeon in the Pacer System on September 22, 2026. The change of address was accepted by the Court on September 24, 2026. The Stay Request was filed by Opposing Party Jasmine Pearl Na in the 9th Circuit on or about September 23, 2026.

The order was not sent to Petitioner's counsel's current address, and was received by mail at her prior address in Laguna Hills.

4.- Further, Petitioner resides in Korea. Petitioner was in a car accident in January and is now facing a surgery, making it difficult to schedule phone or email conferences with him as he has a completely different time zone, and is temporarily disabled.

5.- Once a deadline has passed, Rule 6(b)(1)(B) permits enlargement on motion where the failure to act resulted from excusable neglect. *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 395 (1993)*, calls for an equitable assessment of prejudice, length and effect of delay, reason for delay including whether within the movant's control, and good faith. Counsel's acts and omissions count in that assessment. Petitioner therefore seeks a finding based on the actual service history, not a presumption that service on counsel was ineffective.

6.- The Proposed Opposition to Stay is filed exactly one day late; no real harm could come to allowing Petitioner to file a late opposition. Petitioner requests leave and an order deeming the accompanying opposition timely filed as of the date it is tendered, September 29, 2026.

## II. PROPOSED OPPOSITION TO STAY

7.- **The existing judgment controls absent a stay.** Following an eleven-day evidentiary hearing, this Court ordered S.A.N. returned to South Korea while K.E.N. remains in the United States. Dkt. 69 at 1–2, 13–14, 23. Respondent seeks to suspend only S.A.N.'s return. Petitioner asks the Court to deny the stay.

8.- **Governing standard.** *Chafin v. Chafin*, 568 U.S. 165, 178–80 (2013), directs courts deciding whether to stay a Hague return order to apply the four

traditional factors: likelihood of success, irreparable injury absent a stay, substantial injury to others, and public interest. The first two are particularly important; an appeal is not itself a stay. *Nken v. Holder*, 556 U.S. 418, 433–35 (2009). Chafin also holds that return of a child does not itself moot the appeal and cautions against routine stays that defer a child's readjustment in the habitual-residence country.

9.- **Likelihood of success.** Respondent challenges the Court's child-specific treatment of the grave-risk defense, the adequacy of its findings, sibling separation, and implementation details. The judgment expressly distinguishes the children's experiences and concludes that S.A.N. should return while K.E.N. remains here. Dkt. 69 at 13–14, 23. Respondent's arguments merit careful consideration, but the possibility of a different appellate assessment does not itself establish a strong likelihood of reversal. The Court can consider practical implementation terms without suspending its adjudicated return directive for the entire appeal. It should be noted that Petitioner JUNG WOOK NA previously returned S.A.N. to the United States after a summer holiday, following the agreed orders of the District Court.

9.- Petitioner has filed his own Notice of Cross Appeal. He contends that both children should be returned to their state of Habitual Residence. His contentions are that the 2 domestic violence allegations against Respondent were remote in time and did not result in any injury, the first being in approximately 2014, and the next, in approximately 2023 neither of which was ever reported to law enforcement nor resulted in any visible injury to Respondent, is insufficient to create a Grave Risk to either child. Respondent Jasmine Pearl Na had spent most of the marriage in California while the minor children both lived in Korea under the care of Petitioner, who took

care of all feeding, clothing, education and medical care, including specialized care for K.E.N., who required leg braces to be worn for a couple of years while she was very young.

10.- Though the Judgment made a finding that Petitioner had hit K.E.N. with the leg braces while she was approximately 5-6 years old, K.E.N. specifically denied that *anyone* had *ever* hit her with the leg braces she had worn at that point in her life, when directly questioned in a deposition held by the District Court, in chambers.

11.- K.E.N. also stated she would be fine moving back to Korea if she could be assured that she would not again be disciplined physically by her father, Petitioner. She claimed she had been abused by him once when she was 12, and several other times when she was five years old. The other child, S.A.N. expressed that she wondered why everyone could not visit one another, and stay in both countries, so that everyone could see one another, a remarkably astute observation for a seven year old.

12.- The cross appeal will focus on the applicable state of Article 13b defenses when very few instances of abuse are alleged or proven.

13.- Further, Korea's Family Court has an ongoing custody investigation which will result in a report in mid October 2026, which Petitioner requested the District Court to wait for, as the report is essential to be considered prior to the finding of a Grave Risk.

> Article 13 of the Hague Convention on the Civil Aspects of International Child Abduction, states as follows:
>
> Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that – a) the

> person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or
> b) there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.
> The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.
> In considering the circumstances referred to in this Article, the judicial and administrative authorities **shall** take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

14.- Despite being asked just prior to closing arguments, to delay the decision until the October report which both parties and both children had fully participated in, in Korea, the District Court refused to delay the decision for another month and a half to determine what Korea would do to address the allegations of abuse and physical discipline raised during the Hague proceedings in California, in order to ameliorate those risks to the children.

15.- The report will be ready in a matter of weeks; the "shall" admonition in the last section of Article 13 imposes a requirement, which the District Court did not follow. This will all be addressed in the cross appeal.

16.- **Irreparable harm.** Respondent points to the consequences of international travel, separation from K.E.N., asserted health and therapy concerns, and uncertainty about transition arrangements. Those concerns

deserve individualized consideration. But the stay applicant must substantiate probable harm to S.A.N. from implementing this particular order, not rely solely on the ordinary consequences of return or the existence of an appeal. The Court's judgment already makes a child-specific grave-risk determination. Dkt. 69 at 13–14, 23. Petitioner disputes that the record supporting the stay motion establishes a new imminent harm that requires suspending the judgment.

17. The children have been separated before, when they came to California in 2022, and Petitioner returned the youngest child S.A.N. by herself with an air steward escort, at the age of 3, to Korea, after keeping her in California for five months with the agreement of Petitioner. Respondent abruptly returned K.E.N. in early 2023, without notice, because she was unable to care for the child.

18.- Petitioner has clearly been the caretaker, primary parent of both children, who were deeply bonded with their father as their mother lived for the most part, in California, while the children were both in Korea for most of their lives. If anything, the disruption to the children's lives is greater if they remain in California, but at least for the youngest child, she can return to her normal routine and continue the course of dental work which had been long delayed in the U.S.A. while her mother, the Respondent, decided not to get dental work done for S.A.N., leaving S.A.N. in need of a root canal procedure at the age of 7, which was done over the summer of 2026, in Korea, with Petitioner taking the child to and from dental appointments, therapy sessions, and to visits with friends and family.

19.- There is simply no danger to either child, but especially, not to S.A.N., who should be returned to Korea to attend school and remain in Petitioner's care, pending resolution of this appeal and cross appeal.

## IV. ARGUMENT

### A. Respondent Has Not Made the Required Merits Showing; Due Process Rights Are Implicated in Staying the Return of S.A.N., No Evidence Was Ever Presented at Trial Alleging Any Harm to S.A.N. By Petitioner.

Respondent has not identified a substantial likelihood that the Ninth Circuit will reverse the return order as to S.A.N. The Court conducted an eleven-day evidentiary hearing and made individualized findings. It distinguished S.A.N. from K.E.N. based on the record before it: no evidence that Petitioner had ever hit S.A.N. and no allegation that Petitioner physically abused S.A.N. in any fashion. No abuse or neglect of S.A.N. by Petitioner was ever even *alleged*. During the court-ordered summer visit to Korea, no allegation of abuse or neglect arose against Petitioner by anyone. The Court then applied the Convention's grave-risk standard to each child and ordered return only as to S.A.N.

The denial of S.A.N.'s return to Korea and to the care of Petitioner, raises due process issues, as the evidence at trial never pointed to any harm to S.A.N. at all. Given that no opportunity was ever given to rebut evidence not presented, it is shocking that the allegations were made in closing arguments and now, in motions to Stay. Due process rights are guaranteed by the *Fifth Amendment to the United States Constitution.*

The application's asserted appellate issues do not establish a basis for relief. The claimed tension between the Court's findings as to K.E.N. and its separate determination as to S.A.N. is an argument against the judgment, not a showing that the judgment is likely erroneous. The Court expressly made the child-specific distinction that Respondent now challenges. A stay

motion is not the occasion to retry the evidentiary hearing or to treat an adverse finding as an unresolved legal question.

Nor does Respondent identify a presently material defect in the return directive. The Court ordered S.A.N. returned to Korea to reside with Petitioner. The fact that the judgment does not prescribe every travel, passport, or transition detail does not alter the final ruling or justify suspending it. Implementation details can be addressed through counsel and, if necessary, appropriate proceedings, without postponing the return judgment pending appeal.

**B. Respondent Has Not Shown Probable, Case-Specific Irreparable Harm.**

Respondent's claimed injury is speculative. Her application assumes an immediate, uncontrolled international transfer, but identifies no set travel date, issued ticket, transfer order, or directive from Petitioner authorizing anyone to remove S.A.N. outside lawful process. The District Attorney's Office advised the parties that implementation would not occur that day or that week. Petitioner's communications seeking compliance and lawful assistance do not establish that Respondent faces irreparable harm before the noticed stay motion can be heard.

The claimed harms also arise from the relief the Court already ordered after considering the Convention defenses. Separation from Respondent and K.E.N., disruption from a return to Korea, and adjustment to a new school setting are foreseeable consequences of any Hague return order. They cannot alone establish the individualized, probable irreparable harm required for a stay. To hold otherwise would convert the filing of a notice of appeal in a Hague case into an effective automatic stay.

Respondent's reliance on S.A.N.'s reaction during a September 10 school drop-off does not change the analysis. The record describes one school incident during a period of post-judgment uncertainty. It does not provide an expert opinion, clinical finding, or other competent evidence that compliance with the return order will cause probable irreparable harm. Likewise, the record confirms that S.A.N. has an existing relationship with Petitioner and recently completed a two-month court-ordered summer visit in Korea without any allegation of physical abuse by Petitioner.

Again, the Order and Judgment was made on September 4, 2026. An allegation made as to a tearful moment on September 10, 2026, is simply beyond the scope of what the Court should consider in the Stay Request. Petitioner has no ability to address this issue, as he himself is prepared to welcome his daughter home to Korea.

**C. A Stay Would Substantially Injure Petitioner and Frustrate the Convention's Purpose.**

Petitioner has a compelling interest in prompt implementation of a final order returning S.A.N. to her habitual residence after a wrongful removal. The Court found that South Korea was S.A.N.'s habitual residence and that Respondent's removal violated Petitioner's custody rights. Further delay perpetuates the displacement that the Convention and ICARA are designed to remedy.

The public interest likewise weighs against a stay. The Supreme Court has emphasized that <u>routine stays of Hague return orders can cost children precious months of readjustment in their country of habitual residence and conflict with the Convention's prompt-return objective.</u> *Chafin*, 568 U.S. at 179-80. Respondent's proposed conditions do not cure this prejudice. Electronic contact is not a substitute for implementation of

the Court's return judgment, and passport restraints would reinforce a delay that Respondent has not justified under the governing standard.

**D. The Requested Stay Should Also Be Denied** in the Interest of Comity**.**

The Hague Convention requires Courts to Return Children to their State of Habitual Residence promptly, unless there are exceptions to the Return which are proven by clear and convincing evidence.

"Under Article 13(b) of the Convention, return of an abducted child is not required if '[t]here is a grave risk that ... return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.' A respondent must establish this defense by 'clear and convincing evidence.' 22 U.S.C. § 9003(e)(2)(A)." "If a court finds that return poses a grave risk to the child, it may then take into 'account any ameliorative measures (by the parents and by the authorities of the state having jurisdiction over the question of custody) that can reduce whatever risk might otherwise be associated with a child's repatriation.' *Blondin v. Dubois ('Blondin II'), 189 F.3d 240, 248–49 (2d Cir. 1999)*.

The Stay should be denied as no evidence at all, at trial, shows that there is any Grave Risk at all, for S.A.N., to being returned to her father and her state of Habitual Residence, Korea.

**E. The Requested Stay Is Inappropriate; Petitioner's Cross Appeal Will Address Deficiencies in The Judgment Which Is Likely to Prevail, Rather Than Respondent's Appeal.**

The Cross Appeal is likely to prevail as the District Court's Order does not meet the standard required for a "Grave Risk" finding.

Physical discipline rises to Article 13(b) abuse when the evidence shows something substantially more serious than minimal corporal

punishment. The sources repeatedly describe the needed harm as severe, serious, repeated, sustained, or likely to recur, *Delgado v. Marquez, 23-cv-05141-VKD (N.D. Cal. Feb 09, 2024)*; *Stanley v. Stanley, 2:26-cv-00006 (D. Vt. Mar 26, 2026)*; *Gil-Leyva v. Leslie, No. 18-1209 (10th Cir. Jun 27, 2019)*. Conduct at that level includes sexual abuse, severe beatings or comparable physical abuse, death threats, serious neglect, or domestic violence in the home that seriously endangers the child or places the child in fear, *Golan v. Saada, 142 S.Ct. 1880 (2022)*; *Simcox v. Simcox, 511 F.3d 594 (6th Cir. 2007)*; *Delgado v. Marquez Delgado v. Marquez, 23-cv-05141-VKD (N.D. Cal. Feb 09, 2024)*.

No testimony supported the notion that either child ever witnessed either of the two instances of domestic violence, one in 2014, the other in 2023. Respondent reported that the eldest child, K.E.N., was asleep in the 2014 incident, in the next room, and did not testify either child was present during an argument over a cell phone during which Respondent testified her chest was injured by the cell phone, though the medical record shows no bruising or any other incident of injury.

The cases recognize that abuse of the other parent can matter if it seriously endangers the child or if the child is exposed to it in a way that creates grave physical or psychological risk, *Delgado v. Marquez, 23-cv-05141-VKD (N.D. Cal. Feb 09, 2024)*; *Royal Borough of Kensington & Chelsea v. Banfa-Louis, 22-cv-8303 (PKC) (S.D. N.Y. Mar 07, 2023)*; *Mohácsi v. Rippa Mohácsi v. Rippa, 346 F.Supp.3d 295 (E.D. N.Y. 2018)*.

No testimony regarding the exposure to the children of either incident was adduced at trial, as none was alleged to have occurred by Respondent.

Partner abuse is not enough by itself; the respondent must connect it to a grave risk to the child, not merely to the respondent parent, *Royal*

*Borough of Kensington & Chelsea v. Banfa-Louis, 22-cv-8303 (PKC) (S.D. N.Y. Mar 07, 2023)*; *Rubio v. Castro, 19-CV-2524(KAM)(ST) (E.D. N.Y. Oct 15, 2019)*.

Further, on the facts of the instant case, the District Court's finding that the minor child K.E.N. was hit by Petitioner with the leg braces K.E.N. required as a young child, is directly contradicted by K.E.N.'s own testimony, with was identical to Petitioner's. Yet Respondent, who was not even an eye witness to the alleged abuse, testified it had occurred, and so did her expert, Dr. Dobson. Despite the clear denial by K.E.N. that anyone had ever hit her with her leg braces, this "fact" has permeated to proceedings, and will be a central part of the Cross Appeal.

Not only did Petitioner not abuse K.E.N., but K.E.N.'s own testimony was ignored by the Judgment, and contradicts factual findings in the Judgment, casting doubt on the entire Judgment except for the Order that S.A.N. should return to Korea.

## V. CONCLUSION

The Court should deny Respondent's Application for Stay.

Dated: September 29, 2026
Respectfully submitted,

***MERRITT McKEON***
Merritt McKeon, Esq.
Attorney for Petitioner Jung Wook Na

## DECLARATION

I am the attorney for Petitioner and Cross-Appellant, Jung Wook Na.

1.- My address was changed in the Pacer System several days after the Notice of Change of Address on September 22, 2026. The change of address was accepted by the Court on September 24, 2026. The Stay Request was filed by Opposing Party Jasmine Pearl Na in the 9th Circuit on or about 9/23/2026. The order was not sent to Petitioner's counsel's correct email address. This created some confusion on my part, and I believe my tardiness is excusable under this circumstance.

2.- My client, Petitioner Jung Wook Na, resides in Korea. Petitioner was in a car accident in January 2026, and is now reportedly facing a back surgery, making it difficult to schedule phone or email conferences with him as he has a completely different time zone, and is temporarily disabled.

3.- Mr. Na previously submitted a declaration in opposition to the Stay requested by Respondent in the District Court. I am unable to obtain his new signature, but his position is unchanged. He wants to see his daughter, S.A.N., and wishes that K.E.N. had also been returned, but seeks the enforcement of the order returning S.A.N. to Korea, where he and his family, S.A.N.'s paternal grandparents, will welcome her with open arms.

I certify that the foregoing declaration is true and correct.

***MERRITT McKEON***

Merritt McKeon, Esq.  September 29, 2026