**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

JUNG WOOK NA,
Petitioner-Appellee,

v.

JASMINE PEARL NA,
Respondent-Appellant.

No. 26-6105

D.C. No.
8:25-cv-02479-DOC-ADS

Central District of California
Hon. David O. Carter

# RESPONDENT-APPELLANT'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING APPEAL

On Appeal from the United States District Court
for the Central District of California
No. 8:25-cv-02479-DOC-ADS
Hon. David O. Carter, District Judge

STEPHANE QUINN, CFLS (SBN 278188)
DAVID DWORAKOWSKI, CFLS, CALS (SBN 135285)
QUINN & DWORAKOWSKI, LLP
2050 Main Street, Sixth Floor, Suite 600
Irvine, California 92614
Telephone: (949) 660-1400
quinn@orangecountyfamilylaw.com
david@orangecountyfamilylaw.com

*Attorneys for Respondent-Appellant Jasmine Pearl Na*

# TABLE OF AUTHORITIES

## Cases

*Andreiu v. Ashcroft*, 253 F.3d 477 (9th Cir. 2001) (en banc) .................. 11
*Chafin v. Chafin*, 568 U.S. 165 (2013) .......................................... 4, 13, 16
*Colchester v. Lazaro*, 16 F.4th 712 (9th Cir. 2021) .................................. 6
*Ermini v. Vittori*, 758 F.3d 153 (2d Cir. 2014) ......................................... 7
*Golan v. Saada*, 596 U.S. 666 (2022) .................................................. 14
*Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) (per curiam) ..... 4, 10
*Nken v. Holder*, 556 U.S. 418 (2009) .................................................. 12
*Radu v. Shon*, 62 F.4th 1165 (9th Cir. 2023) ................................. 7, 8, 15
*Simcox v. Simcox*, 511 F.3d 594 (6th Cir. 2007) ................................ 4, 12

## Statutes

28 U.S.C. § 1746 ........................................................................ 8

## Treaties

Hague Convention on the Civil Aspects of International Child Abduction, art. 13 ................................................................ 4, 13

## Rules

Fed. R. App. P. 3(b)(2) .............................................................. 16
Fed. R. App. P. 26(b) ................................................................... 3
Fed. R. App. P. 28.1 ............................................................. 13, 16
Fed. R. Civ. P. 6(b) ..................................................................... 3
Ninth Cir. R. 27-1, Circuit Advisory Committee Note ............................ 3
Ninth Cir. R. 27-12 .................................................................... 16

## Preliminary Statement

Father answers a prospective-risk challenge primarily by repeating that he has not previously struck S.A.N. But the district court found both a pattern of abuse and concealment affecting her sister and S.A.N.'s own unwillingness to discuss that abuse. The question is whether the court adequately assessed what returning S.A.N. to that household, separated from her mother and protected sibling, would mean for her. The opposition does not resolve that question.

Father acknowledges filing his proposed opposition one day late. Opp. 4–5.[1] FRAP 26(b), not the cited Civil Rule 6(b), governs his request. Counsel acknowledged notice of the emergency motion in writing at 9:28 a.m. on September 22, APP-126, and her declaration does not identify when she learned of the response deadline. Opp. 16. Father's motion for leave neither states Mother's position nor describes any effort to obtain it. Circuit Advisory Committee Note to Rule 27-1(5). Mother does not oppose leave; she answers the opposition on its merits.

---

1. "Opp." is DktEntry 9.1; "Mot." the emergency motion; "APP" its appendix. District-court citations use ECF pagination.

## I. The Opposition Does Not Answer The Substantial Appellate Questions.

*Chafin v. Chafin* directs courts to "apply the four traditional stay factors in considering whether to stay a return order." 568 U.S. 165, 179 (2013). Under *Leiva-Perez v. Holder*, "petitioners need not demonstrate that it is more likely than not that they will win on the merits." 640 F.3d 962, 966 (9th Cir. 2011) (per curiam). The substantial-case route nevertheless requires probable irreparable harm and a balance of hardships tipping sharply toward the applicant. *Id.* at 968–70. Father himself allows that Mother's arguments "merit careful consideration," Opp. 6, and that her harm concerns "deserve individualized consideration." Opp. 9. That is the vocabulary of a substantial case.

### A. Absence Of Prior Direct Injury Does Not End The Prospective Inquiry.

Father repeatedly emphasizes that "[n]o abuse or neglect of S.A.N. by Petitioner was ever even alleged." Opp. 10. Article 13(b) instead asks whether return "would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation."

*Simcox v. Simcox*, which Father cites, addresses precisely why the absence of prior injury is not dispositive. Of a younger sibling who had

largely escaped her siblings' injuries, it says: "nothing in the Convention requires that a child must first be traumatized by abuse before the Article 13b exception applies." 511 F.3d 594, 609 (6th Cir. 2007). It requires examining the risk to this child rather than demanding her first injury.

The judgment supplies the child-specific connection. It finds:

> "Even S.A.N was unwilling to answer questions about the disciplinary actions her father took against K.E.N and Father has admitted that he has created an environment of secrecy around the hitting of K.E.N." Dkt. 69 at 13 (APP-015).

The court also credited expert testimony that concealment, avoidance of mandated reporters, and reframing violence as discipline undermine safeguards dependent on disclosure and voluntary compliance. *Id.* at 13, 17 (APP-015, APP-019). These are findings about the household to which S.A.N. would return and about her own response to its secrecy. They are not speculation.

The summer visit and the absence of reported abuse during it, Opp. 6, 10, are relevant, but a finite court-ordered visit does not answer what the findings about suppressed disclosure mean for a permanent return that separates the sisters between countries.

### B. The Conflicting Findings and Sibling Separation Require Meaningful Review.

The court expressly found grave risk "for K.E.N only." Dkt. 69 at 22 (APP-024). Mother does not recast that conclusion as a grave-risk finding for both children. But the same page states:

> "School, therapist, or guardian reporting cannot sufficiently protect the children because Father previously kept K.E.N from school and directed her not to report." *Id.*

That statement appears in the remedial-measures discussion following the K.E.N.-only conclusion. Its scope remains unexplained, especially alongside the finding about S.A.N.'s silence. The issue is not the plural noun alone, but whether the court applied its findings about concealment and ineffective reporting to the younger child's prospective risk.

*Colchester v. Lazaro* requires findings "explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision." 16 F.4th 712, 727 (9th Cir. 2021) (citation omitted). Unlike *Colchester*, this judgment contains extensive findings; the defect is their unresolved application to S.A.N. *Radu v. Shon* requires review of "factual determinations for clear error" and "application of the

Convention to those facts *de novo*." 62 F.4th 1165, 1172 (9th Cir. 2023) (citation omitted). Respect for factfinding does not foreclose that legal inquiry.

The opposition likewise calls sibling separation an ordinary consequence of return. Opp. 11. But the return order protects one child from Father's household while sending her seven-year-old sister there, without addressing the effect of that division. Dkt. 69 at 13–14, 23 (APP-015–016, APP-025). *Ermini v. Vittori* upheld keeping siblings together "in light of the children's close relationship to each other, and, significantly, the conclusion we reached with respect to abuse." 758 F.3d 153, 167 (2d Cir. 2014). Mother invokes that reasoning, not a categorical sibling exception.

Father's account of earlier periods of separation, Opp. 9, does not resolve the effects of this split return. Mother's declaration describes the sisters' resumed shared household, daily routine, and therapy through the same provider. Dkt. 72-2 ¶¶ 3–4 (APP-057). On Father's own account, S.A.N. "wondered why everyone could not visit one another, and stay in both countries, so that everyone could see one

another." Opp. 7. That is a seven-year-old's wish not to have her family divided, offered by the party seeking to divide it.

### C. Counsel's Competing Account of Testimony Does Not Eliminate the Independent Findings.

Father asserts that K.E.N. denied the leg-brace incident and that this undermines the judgment except its S.A.N. return provision. Opp. 7, 15. The opposition supplies no transcript excerpt or pinpoint supporting counsel's account. Counsel's declaration does not address the interview testimony and is not made under penalty of perjury, *see* 28 U.S.C. § 1746; Father supplies no new declaration; counsel concedes she could not obtain his signature and relays his position on her own say-so. Opp. 15–16. The judgment credits both the Guardian ad Litem's testimony and K.E.N.'s own disclosure on the leg brace, Dkt. 69 at 12, 16 (APP-014, APP-018), and on the same page recounts K.E.N.'s chambers testimony that Father hit her with a plastic stick, covered the marks with band-aids, and told her not to tell anyone. *Id.* at 16. Those are credibility determinations reviewed for clear error, and Father identifies nothing that makes them "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Radu*, 62 F.4th at 1174–75.

Even setting that incident aside, the court found that Father admitted striking K.E.N. with a stick, leaving marks, bandaging them, directing silence, and concealing the incident despite knowing the reporting laws. It separately found: "The stick incident was not isolated," credited the Guardian ad Litem's hanger testimony, and found that incident occurred. *Id.* at 16 (APP-018). Those findings cannot be reduced to an unproved leg-brace allegation or erased by announcing a cross-appeal.

The due-process argument, Opp. 10, answers a claim Mother never made. She seeks no relief on any new accusation concerning S.A.N., only on the trial court's express findings and their legal significance for her prospective safety.

## II. THE HARM SHOWING IS CURRENT AND SPECIFIC TO S.A.N.

Father argues that no ticket or departure date establishes harm "before the noticed stay motion can be heard." Opp. 11. That posture has passed. The district court vacated the October 19 hearing, and this Court temporarily stayed the judgment "pending further order." Dkt. 75 ¶ 7 (APP-002); DktEntry 7.1. The harm to be prevented is enforcement

of the return judgment itself once a stay is denied, not only an unauthorized removal of S.A.N.

The District Attorney's statement that return would not occur "today or even this week" was made September 9. APP-127. It was not a standstill during appeal. Father's contemporaneous demands included "asap" and "by this Saturday"; his counsel wrote, "My client can get tickets but we need to get something moving asap." Dkt. 72-2 ¶ 5 (APP-057); APP-128. The opposition now expressly seeks enforcement, Opp. 16, and asks that S.A.N. be returned "pending resolution of this appeal and cross appeal." Opp. 9. On September 22, responding to notice of this motion, counsel reported that Father's father, whom she had identified to the District Attorney as the person who "can travel to pick up" S.A.N., had arrived in Orange County. APP-126, APP-127. Absence of a booked flight while a stay prohibits implementing the return does not establish that no transfer is threatened if protection ends.

Mother agrees that ordinary relocation distress, or an appeal alone, is insufficient. But this Court counts "separation from family members" and "medical needs" among the "important" irreparable-harm factors. *Leiva-Perez*, 640 F.3d at 969–70 (quoting *Andreiu v. Ashcroft*,

253 F.3d 477, 484 (9th Cir. 2001) (en banc)). Her showing is cumulative and individualized: a seven-year-old who would lose her shared daily life with the sister protected from Father's abuse; placement with the parent found to suppress disclosure, including a finding of this child's unwillingness to discuss his conduct; and disruption of supports addressing her documented separation distress. Dkt. 69 at 13 (APP-015); Dkt. 72-2 ¶¶ 3–8 (APP-057–058).

The evidence is not limited to Mother's description of crying. S.A.N.'s teacher reported counseling, preferred seating, frequent breaks, and that she "seems to be doing really well!" The teacher nevertheless anticipated further crying because S.A.N. missed Mother and described continuing "soft starts" and access to a calm corner. APP-119. The counselor offered ongoing support; both parents signed the consent, and S.A.N. resumed full-day attendance. APP-120; Dkt. 74-1 ¶ 10 (APP-113).

These communications do not diagnose a disorder or predict permanent injury. They corroborate a current difficulty with separation and the supports under which S.A.N. regained stability. Read with the household findings, they support the inference that abrupt

international separation and loss of those supports will cause more than ordinary adjustment distress. That is the probable interim harm Mother asks the Court to prevent, not a claim that one school incident independently establishes Article 13(b).

Father's categorical objection to postjudgment evidence, Opp. 12, confuses two inquiries. The merits ask whether the judgment was correct on the trial record; the irreparable-harm factor asks "whether the applicant will be irreparably injured absent a stay," *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted), which necessarily turns on present circumstances. In *Simcox*, the Sixth Circuit granted a stay based partly on threats made after the return order. 511 F.3d at 601. Its account states that the Sixth Circuit granted the stay "citing the evidence of physical abuse, Mr. Simcox's threats to subject Mrs. Simcox to criminal prosecution," and delay in seeking return. *Id.* The analogy is limited but defeats a categorical cutoff. Here, the school evidence was submitted below on the stay request; it is not offered to rewrite the trial evidence.

*Chafin* cautions against routine stays and also recognizes that "shuttling children back and forth between parents and across

international borders may be detrimental to those children." 568 U.S. at 178. It directs individualized application of the four traditional stay factors and expedited review. *Id.* at 179. Mother seeks that individualized relief, not a stay based on mootness or the mere existence of an appeal. Father's cross-appeal does not answer her showing; it enlarges what is at stake, because he asks to move S.A.N. now while pursuing an appeal that could move K.E.N. later. Under Rule 28.1, the appeal and cross-appeal are briefed together, and this Court's decision will govern the return rulings as to both sisters. Moving one sister before that decision, with the other's ruling also under review, invites the shuttling *Chafin* describes. A later re-return could not restore the intervening shared family life or prevent disruption already experienced. Those circumstances, not travel alone, support a conditioned stay during expedited review.

## III. A FUTURE KOREAN REPORT DOES NOT SUPPLY PRESENT PROTECTION.

Father argues that Article 13 required postponement until a Korean custody investigation report expected in October. Opp. 7–8. The text requires consideration of social-background information "provided by the Central Authority or other competent authority." It does not

make an anticipated report a prerequisite to decision, and Father identifies no information a Central Authority actually furnished that the court disregarded. Father supplies neither that report nor a present protective order implementing its still-unknown recommendations.

*Golan v. Saada* states: "The question whether there is a grave risk, however, is separate from the question whether there are ameliorative measures that could mitigate that risk." 596 U.S. 666, 677 (2022). It further cautions that "[c]onsideration of ameliorative measures should not cause undue delay in resolution of return petitions." *Id.* at 682. *Golan*, which Father also cites, recognizes that "physical or psychological abuse, serious neglect, and domestic violence in the home may also constitute an obvious grave risk to the child's safety that could not readily be ameliorated," and that a court "may also decline to consider imposing ameliorative measures where it reasonably expects that they will not be followed." *Id.* at 680. Its possible future availability does not answer the present stay showing.

The judgment already addressed the distinction between Korean law and protection in this household: "The existence of Korean child-protection laws does not resolve the case specific problem." Dkt. 69 at 22

(APP-024). It found Father knew those laws and concealed abuse because he feared their consequences. *Id.*

Mother's concern is safety-related implementation in light of the unresolved child-specific findings. *Radu* ordered clarification of the grave-risk finding, custody arrangements, and protective arrangements before affirming return. 62 F.4th at 1171. Counsel's suggestion that details can be arranged later, Opp. 11, does not itself resolve the safety questions here.

## IV. THE EQUITIES FAVOR A CONDITIONED, EXPEDITED STAY.

Father's interest in prompt return and in-person parenting is substantial, and electronic contact is not equivalent. But the district court already imposed passport and travel restraints, continued school and therapy requirements, and protected reasonable electronic communication. It found those conditions "adequately protect Petitioner's interests." Dkt. 75 ¶¶ 2–6 (APP-001–002). That finding concerned a short bridge, not the entire appeal; Mother therefore requests expedited review, not indefinite delay.

Mother facilitates daily electronic contact with S.A.N., accepts every existing condition, and will cooperate in expedition. Dkt. 72-2 ¶¶

9, 11 (APP-059). Her interest is avoiding the identified harm before review; Father's enforcement interest is delayed, not adjudicated away. On this record, the hardships tip sharply toward maintaining the current placement.

*Chafin* recognizes "the familiar judicial tools of expediting proceedings and granting stays where appropriate." 568 U.S. at 178. A conditioned stay protects the child while preserving meaningful, prompt review of the Convention's safety exception.

## CONCLUSION

Mother requests a stay pending appeal of the portion of Dkt. 69 directing S.A.N.'s return, continuation of the conditions in Dkt. 75 without bond, and expedited merits review. The existing administrative stay should remain in effect until the Court resolves the emergency motion. Mother proposes that briefing under Rule 28.1 proceed on 28-, 28-, 14-, and 7-day intervals from the filing of the transcript, with argument at the earliest available session, and will move under Circuit Rule 27-12 and, if necessary, to consolidate under Federal Rule of Appellate Procedure 3(b)(2) with transcript status and opposing

counsel's position. Neither appeal's ultimate merits need be decided to grant that relief.

Dated: September 30, 2026 Respectfully submitted,

**QUINN & DWORAKOWSKI, LLP**

/s/ Stephane Quinn
STEPHANE QUINN, CFLS (SBN 278188)

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because, excluding the portions exempted by Rules 27(a)(2)(B) and 32(f), it contains 2,574 words. It also complies with the ten-page limit of Circuit Rule 27-1(1)(d) under the conversion formula of Circuit Rule 32-3(2), because that word count divided by 280 does not exceed ten.

This reply complies with the typeface and type-style requirements of Rules 27(d)(1)(E) and 32(a)(5)–(6) because it was prepared in a proportionally spaced 14-point Century Schoolbook typeface.

Dated: September 30, 2026

/s/ Stephane Quinn
STEPHANE QUINN

## Certificate Of Service

I certify that on September 30, 2026, I electronically filed the foregoing Respondent-Appellant's Reply in Support of Emergency Motion for Stay Pending Appeal with the Clerk of the United States Court of Appeals for the Ninth Circuit through the appellate electronic filing system, which serves registered counsel.

I also served a copy by email on Merritt McKeon, counsel for Petitioner-Appellee Jung Wook Na, at teammerritt@reelfathersrights.com and merrittmck@hotmail.com.

/s/ Stephane Quinn
STEPHANE QUINN